(Lorain County Court of Common Pleas.)

THE STATE OF OHIO v. JOHN KRAUSE.

1. A jury whose names are placed in the wheel, and drawn therefrom as provided by the act of April 23, 1894, (91 v. 176) is a lggally constituted jury.
2. The commissioners of jurors, appointed in accordance with said statute, are commissioners de facto, if not de jure, and so long as they hold the positions and perform the duties required of them by said statute, their acts are legal.
3. The acts of an officer de facto, when questioned collaterally, are as binding as those of an officer de jure. (Ex parte Strang, 21 Ohio St. 610.)

(Decided November, 1894.)

DEMURRER to plea in abatement.

NYE, J.

In the case of the State of Ohio against John Krause, the defendant was indicted by the grand jury at the present term of this court, for the crime of unlawfully selling intoxicating liquors. The grand jury which found and returned the indictment in this case, was the regular grand jury of the term. All the names of said grand jury were drawn from the wheel, except a few who were summoned from the by-standers. To this indictment a plea in abatement has been filed by the defendant on the ground that the grand jury which returned the indictment is not a legally constituted grand jury, for the following reasons:

"First—Because the second section of an act passed April 23, 1894, entitled 'An act to provide for the appointment of jury commissioners and the selection of jurors in certain counties, and to repeal certain sections therein named,' and under and by virtue of which the commissioners were appointed which selected the grand jury finding this indictment, is contrary to the constitution of the state of Ohio, and therefore void.

"Second—Because the commissioners appointed under said act in and for the county of Lorain, had no constitutional authority to select persons to act in the capacity of grand jurors of the county.

" Third—Because the persons, and each of them, composing the grand jury which found and presented said indictment against this defendant, were not selected, summoned, sworn, organized and constituted as such jury in accordance with the law."

To this plea the prosecuting attorney has filed a demurrer on the ground that the plea in abatement does not constitute a defense to the indictment.

The importance of the questions raised by these pleadings demands the most careful consideration.

The section of the law under consideration, passed April 23, 1894, (91 v. 176) provides, among other things, that " the judge or judges of the court of common pleas, for each sub-division of the judicial district, or a majority of such judges, shall, in joint session, appoint four judicious freehold electors in each county, in each of the several sub-divisions of the judicial district. * * * Not more than two of them shall be of the same political party, who shall be commissioners of jurors in each county for one year, and until their successors are appointed and qualified."

The section further provides that said commissioners shall meet on the fourth Monday of May in each year, in the office of the auditor of each county, and " select such number of judicious and discreet persons having the qualification of electors of each county as the court may direct." "The names of the persons so selected as aforesaid shall be written by the county clerk on separate pieces of paper, which shall be put into said wheel and securely locked."

The other sections of said statute provide for the drawing of names from the wheel for grand and petit jurors by the order of courts of record of the county. It is assumed that the commissioners of jurors for Lorain county were appointed in accordance with the provisions of the statute under consideration, and that said commissioners selected the names to be placed in the wheel, and that the names of the grand jury which presented the indictment in this case, were drawn from the wheel.

The question is, whether the grand jury which found this indictment, and all other indictments presented at the present term, was a legally constituted jury. If that was not a legally constituted jury, then any jury whose names are drawn from the wheel would not be a legal jury, and if an objection should be made to any jury whose names should be drawn from this wheel, such objection would have to be sustained and the jury set aside.

It would, in effect, leave the court without any power to procure a jury, unless, perhaps, it might order one called from the by-standers.

The consequences of holding that the the jury was not a legal jury, or that any jury drawn from the wheel would not be a lawful jury, should have no weight in the determination of this case. But we should not lose sight of the real question under consideration. Was the grand jury a legally constituted grand jury?

It is argued in support of this plea in abatement that the law providing for commissioners of jurors attempts to create said commissioners county officers, and provide for their appointment, and that such law is therefore in violation of sections 1 and 2, article 10, of the constitution, which provides that all county officers shall be elected. In support of this proposition, we are cited to the case of *State ex rel.* v. *Brennan,* 49 Ohio St. 33. That was a case in *quo warranto,* in which the right of the defendant to hold the office of storekeeper for Hamilton county was directly drawn in question. The act before the court provided for the appointment by the clerk of the Court of Common Pleas of Hamilton County, of a stationery storekeeper, at a salary of $1,500.00 per annum. . The Supreme Court held that he was a county officer, the act unconstitutional, and that the defendant was illegally appointed.

It will be observed that there is no question made in the case before us that the individual members of the grand jury which presented the indictment were not "judicious and discreet persons having the qualification of electors;" but it is claimed that the manner in which they were selected was unlawful, and that the persons who selected them were unauthorized to act,—the law being unconstitutional,—and that therefore the selection of names by the commissioners of jurors was unauthorized.

It does not seem to me to be necessary for the purposes of this case to determine whether the commissioners of jurors are county officers, or whether the law under consideration is constitutional in view of the re-reported decisions from the Supreme Court of our own state.

If the commissioners of jurors were commissioners *de facto,* their acts would be as legal, in a collateral proceeding, to determine whether a grand jury was legally constituted, as if they were commissioners *de jure.* I think it will not be questioned but that the legislature had the authority to create the office of commissioners of jurors. If it has created such office and provided for filling the office, the commissioners of jurors are *de facto* officers at least, and their acts would be legal, so long as they continued to perform the duties required of them.

In *Ex parte Strang,* 21 Ohio St. 610, which was a proceeding in *habeas corpus* brought by Strang to release him from prison for the reason that Hon. John W. Carter "acting police judge" who tried him, and pronounced sentence, had no legal authority to act because the law under

which said "acting police judge" was appointed was unconstitutional. During the sickness of Hon. W. F. Straub, Judge of the Police Court of Cincinnati, the mayor of said city appointed John W. Carter, a reputable member of the bar residing within the city, to hold the police court during the inability of Judge Straub, in pursuance of sec. 174, of the municipal code passed May 7, 1869.

It was claimed that said section 174 of the code was "in conflict with sections 10 and 13, article 4 of the constitution, which declare that all judges, other than those provided for in the constitution, shall be elected by the electors of the judicial district for which they may be created; and in case of a vacancy in the office of a judge, such vacancy shall be filled by appointment by the governor."

The probate court in which the proceedings in *habeas corpus* was prosecuted, refused to discharge Strang, and remanded him into the custody of the chief of police.

The Supreme Court sustained the decision of the probate court, and in deciding the case, it says: "The acts of an officer *de facto*, when questioned collaterally, are as binding as those of an officer *de jure*." "To constitute an officer *de facto* of a legally existing office it is not necessary that he should derive his appointment from one competent to invest him with a good title to the office. It is sufficient if he derives his appointment from one having colorable authority to appoint; and an act of the general assembly, though not warranted by the constitution, will give such authority."

The court further say: "That assuming (but without deciding the question) the power of appointment thus conferred on the mayor to be unauthorized by the constitution, yet the person acting under such appointment would be a judge *de facto*."

This decision has been affirmed and followed in two recent decisions, and is unqestionably the law of Ohio. See *State ex rel.* v. *Smith*, 44 Ohio St. 348, 369. *Kirker* v. *Cincinnati*, 48 Ohio St. 507.

The act of the general assembly now under consideration provided for commissioners of jurors, and authorized the judges of the courts of common pleas to appoint them. The commissioners then derived their authority from officers "having colorable authority to appoint," and we are unable to see why under the authority just cited, the commissioners of jurors, if officers at all, are not officers *de facto* at least.

In the case just cited in 48 Ohio St. 507, the syllabus is as follows: "Members of the board of city affairs, before law declared unconstitutional, were *de facto* members of the administrative board of Cincinnati, and their acts valid."

In the case of *State ex rel.* v. *Jacobs*, 17 Ohio Rep. 143, the court decided that county commissioners *de facto* can fill a vacancy in the office of county treasurer. Allen county, Ohio, was divided, creating the county of Auglaize out of part of the territory formerly included in the county of Allen. By the division, the residences of two of the county commissioners of Allen county were in the territory included in Auglaize county as organized, and hence it was claimed they ceased to be county commissioners of Allen county. These two men continuing to act as commissioners of Allen county, appointed a county treasurer to fill a vacancy. The court held that they were officers *de facto*, and that there acts were binding, and that the officer so appointed held the office under color of title.

Judge White in pronouncing the decision of the court in the 21st Ohio St. 610, says: "The true doctrine seems to be that it is sufficient if the officer holds the office under some power having color of authority to appoint; and that a statute, though it should be found repugnant to the

constitution, will give such color." In that case a large number of authorities are cited which fully sustain the doctrine.

The law under consideration creates a jury commission, and provides for the appointment of commissioners of jurors. They have been appointed in accordance with that statute, and have performed their duties under it. During the time that they held their positions and performed the duties required of them, their acts must be declared legal, for they are commissioners of jurors *de facto*, if not *de jure*.

I am therefore forced to the conclusion that the grand jury which found and presented the indictment against the defendant, was a legally constituted grand jury, and that the demurrer to the plea in abatement must be sustained,

*E. G. Johnson* and *Q. A. Gillmore*, for plea in abatement.

*F. F. Thomas, Pros. Atty.*, for State.